***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted December 8, 2022, affirmed October 11, 2023

In the Matter of A. M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

A. M.,
*Appellant.*

Coos County Circuit Court
21JU02357, 21JU02091;
A176293 (Control), A176296

Megan Jacquot, Judge.

Ginger Fitch and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this consolidated juvenile delinquency proceeding, youth appeals from a pair of juvenile court judgments that committed her to the legal custody of the Oregon Youth Authority (OYA) with a recommendation for placement in a youth correctional facility. In 2018, the juvenile court asserted jurisdiction over youth for committing an act, which if done by an adult, would constitute one count of harassment (ORS 166.065(3)). In 2021, youth waived her right to a trial and admitted that she committed acts, which if done by an adult, would constitute one count of giving false information to a police officer (ORS 807.620) and one count of giving false information to a police officer in connection with a citation/warrant (ORS 162.385). The court asserted jurisdiction based on her admissions and, after a hearing, ordered her commitment to OYA. On appeal, she argues in a single assignment of error that the juvenile court abused its discretion when it found that it was in her best interests to be committed to OYA custody for placement in a youth correctional facility. We have reviewed the record and conclude that the juvenile court made a permissible determination based on the evidence in the record that it was in youth's best interests to be placed in OYA's custody. Accordingly, we affirm.

Youth sets forth two primary arguments in support of her assignment of error. First, youth argues that the construction of the juvenile code and the cases analyzing the code establish a presumption that it is in a youth's best interests to be placed in the least restrictive placement and for parental custody to be maintained, and that the state did not rebut that presumption in this case. Second, youth asserts that the juvenile court failed to identify a "firm factual basis" for concluding that placement in OYA custody was in youth's best interests under ORS 419C.478. Because the parties are familiar with the factual and procedural history, we do not set out those facts for this nonprecedential memorandum opinion.

We review a juvenile court's determination of the best interests of the youth for an abuse of discretion. *Sjomeling v. C. L. L.*, 251 Or App 172, 187, 285 P3d 1116,

*rev den*, 353 Or 103 (2012). Therefore, we reverse a juvenile court's discretionary determination only if it is not a legally permissible one. *Id.* A discretionary determination is legally impermissible if it is "based on predicate legal conclusions that are erroneous or predicate factual determinations that lack sufficient evidentiary support." *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 117, 376 P3d 960 (2016).

First, we conclude that we need not reach the issue of whether the juvenile code and its case law create a presumption in favor of maintaining parental custody and placing youths in the least restrictive placement. Even if such a presumption exists, we conclude, as explained below, that it has been rebutted by evidence in the record demonstrating that placement in OYA's custody was in youth's best interests.

Second, we reject youth's contention that the record does not establish a "firm factual basis" for the court's conclusion that placement in OYA custody was in youth's best interests. Neither the juvenile code nor its case law requires a "firm factual basis" for the juvenile court's determination to place a youth in OYA custody. As part of disposition proceedings, a juvenile court may place an adjudicated youth in OYA's custody as long as it provides "written findings describing why it is in the best interests of the adjudicated youth to be placed" with OYA. ORS 419C.478(1).[1] Further, the court must consider the following factors: the "gravity of the loss, damage or injury caused"; whether the youth's conduct was "aggressive, violent, premeditated or willful"; "[w]hether the adjudicated youth was held in detention under ORS 419C.145"; the "immediate and future protection required by the victim, the victim's family and the community"; and the youth's "juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders." ORS 419C.411(3)(a) - (e). The court may also consider whether the youth "has made any efforts toward reform or rehabilitation" and "[a]ny other relevant factors or circumstances raised by the parties." ORS 419C.411(4)(a), (g).

---

[1]  ORS 419C.411 (2019) and ORS 418C.478 (2019) were in effect at the time of the proceedings in this case, and both were subsequently amended. *See* Or Laws 2021, ch 489, §§ 67, 82. Because those amendments do not affect our analysis, we cite the current versions in this opinion.

Here, the juvenile court made the required ORS 419C.478(1) written findings that it is in the best interests of youth to be placed in the custody of OYA. Specifically, the court found, "The youth has previously run from treatment facilities that were not secure, and the youth needs to undergo treatment before she is released to a less restrictive placement."[2] In making its determination, the court found that youth suffered from a serious, polysubstance drug problem and that youth had run away from less secure placements in the past. The court further found that, because of the "tenacity of [youth's] drug problem," she did not "have the ability to resist leaving" an unsecure placement. The court also expressed concern that youth has faced dangerous situations while she has been on the run. The court thus reasoned that youth needed to be in a secure facility "until she can be sober and have enough tools to be able to stay in a non-secure treatment facility" when she is granted parole.

In short, the juvenile court considered the circumstances and evidence supported by the record to make its discretionary determination, and thus the court's decision to commit youth to OYA custody for placement in a youth correctional facility was legally permissible.

Affirmed.

---

[2] We agree with youth's argument that, contrary to the juvenile court's explicit finding, she did not run from "treatment facilities." The record indicates that youth ran away from a placement with her mother and from a shelter placement at River Rock. That misstatement, however, does not affect the import of the juvenile court's finding that youth has run away from less secure placements and thus does not undercut the finding that youth was likely to run from future unsecure placements.